```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| GETHSEMANE FBH CHURCH OF GOD | : | CIVIL ACTION |
| | : | NO. 19-03677 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONWIDE INSURANCE COMPANY, | : | |
| d/b/a Scottsdale Insurance Co., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

Eduardo C. Robreno, J.                                       April 7, 2020

I. <u>Introduction</u>

Presently before the Court is Defendant, Nationwide Insurance Company d/b/a Scottsdale Insurance Company's ("Nationwide"), motion for summary judgement on Plaintiff, Gethsemane FBH Church of God's ("Gethsemane"), claims for breach of contract and bad faith. For the reasons set forth below, the Court will grant Nationwide's motion.

II. <u>Factual Background and Procedural History</u>

Gethsemane and Nationwide entered an insurance contract providing commercial-property coverage for the period of June 4, 2017, through June 4, 2018. Gethsemane's roof collapsed on May 13, 2018. Shortly afterwards, Gethsemane made a claim against the policy. Via a letter dated July 12, 2018, Nationwide denied

1

coverage because an engineering report[1] authorized by Nationwide determined that the cause of the collapse was a combination of deferred maintenance, improper roof slope, and poor drainage. None of which were covered by the policy.

Gethsemane disagreed and thus filed its two-count complaint in the Court of Common Pleas for Philadelphia County, Pennsylvania. Nationwide timely removed this case to this Court, invoking diversity jurisdiction. Nationwide's answer denied the complaint's material averments.

Bill Underkoffler, a public adjuster retained by Gethsemane, testified that (1) the weather "close" to the date of Gethsemane's loss was heavily windy and rainy, but he could not remember "what the actual dates were"; (2) he disagreed with the statement by Nationwide that "[a]pparently long-term damage from a leaky roof led to roof collapse"; and (3) he doubted that the long-term damage from a leaky roof was the "main factor" of the collapse. Underkoffler did not offer an opinion as to what caused the roof's collapse. Plaintiff has not produced any other evidence suggesting the cause of the roof's collapse was a covered event under the policy.[2]

---

[1] The engineering report was authored on June 14, 2018, by D2 Consulting Group, LLC.
[2] The report authored by Glenwood Engineering, LLC, produced by Gethsemane, actually belies Gethsemane's argument that a wind and rain event caused the roof's collapse. The Glenwood report states that "[a]pparently, long-term damage from a leaky roof led to [the] roof['s] collapse."

2

Following the close of discovery, Nationwide filed the motion for summary judgment at issue here and Gethsemane filed a response in opposition. The matter is now ripe for disposition.

III. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In ruling on a motion for summary judgment, the Court must consider the evidence in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the moving party bears the initial

---

Nor does Nationwide's subsequent expert report, by Mark S. Suchecki, P.E., provide support for Gethsemane. Suchecki concluded that "[t]he roof would not have failed had it been properly maintained" and that "[t]he roof failure was not caused by the effects of high winds."

3

burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

The Court must enter summary judgment against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotrex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23. Further, a motion for summary judgment cannot be defeated by speculation because "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 333 (3d Cir. 2005) (quoting Hedberg v. Ind. Bell Tel. Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995)).

IV. Discussion

    A.   Breach of Contract

To prevail on a breach of contract claim, a plaintiff must prove by the preponderance of the evidence (1) the existence of

4

a contract and its essential terms, (2) the breach of a duty imposed by that contract, and (3) the resulting damages from the breach. Grudkowski v. Foremost Ins. Co., 556 F. App'x 165, 168 (3d Cir. 2014 (nonprecedential) (quoting Ocasio v. Prison Health Servs., 979 A.2d 352, 355 (Pa. Super. Ct. 2009)). In a claim for breach of an insurance contract, "it is a necessary prerequisite to recovery upon [the] policy for the insured to show a claim within the coverage provided by the policy." Miller v. Bos. Ins. Co., 218 A.2d 275, 277 (Pa. 1966) (quoting Warner v. Emp'rs' Liab. Assurance Corp., 133 A.2d 231, 233 (Pa. 1957)).

There is no dispute that the parties entered into an insurance contract providing coverage for enumerated causes of loss.[3] Gethsemane thus bears the burden of showing that the roof's collapse was caused by an event covered by the policy. See Miller, 218 A.2d at 277.

The issue in this case is whether the collapse of the roof was caused by an incident of wind and rain, in which case the loss would be covered and Nationwide would be under a duty to

---

[3] The Covered Causes of Loss included:
(1) Fire.
(2) Lighting.
(3) Certain types of explosions.
(4) Windstorms or hail with certain limitations.
(5) Smoke.
(6) Aircraft or vehicle collision with the property.
(7) Certain circumstances of riot or civil commotion.
(8) Vandalism.
(9) Sprinkler Leakage.
(10) Sinkhole collapse.
(11) Volcanic action.

5

indemnify Gethsemane, or whether it was caused by long-term deterioration of the roof, in which case, Nationwide would not be.

Nationwide, as the movant, asserts the cause of the collapse was a combination of deferred maintenance, improper roof slope, and poor drainage and therefore is not covered by the policy. This combination of causes was determined by D2 Consulting Group, LLC's, June 14, 2018, report. Gethsemane, as the nonmovant, asserts that the loss was caused by a wind and rain event—a cause which is enumerated as a covered event by the policy. Gethsemane bases its conclusion on Underkoffler's testimony. Gethsemane argues that, through Underkoffler's testimony, it made a sufficient showing that Nationwide's denial of its claim was a breach of Nationwide's duty under the policy to cover losses caused by wind and rain events. However, review of Underkoffler's deposition testimony demonstrates that it is based on mere speculation, as follows:

```
21   . . .There was a
22   large storm about two weeks prior and a
     large
23   storm real close to this date of loss.
     I'm
24   trying to remember if it was just that,
     or most

1    of the time with loss like this you end
     up
2    with an on-or-about for a date of loss,
     but I
```

```
          3    do remember two significant weather
               events
          4    around the period of the loss
     . . .
          11   I don't recall what the actual dates
               were, but
          12   it lined up with this event
```

Underkoffler Dep. 15-16, Oct. 30, 2019 (emphasis added).

Aside from the unclear recollection of the date, Underkoffler's disagreement with Nationwide's findings is wrought with speculation:

```
          7    I want to ask you about that first
          8    line, "Apparently long-term damage from
               a leaky
          9    roof led to roof collapse." Do you
               agree with
          10   that conclusion?
          11   A.   I don't
     . . .
          14   Q.   What is your basis for disagreeing
          15   with it?
          16   A.   Well, every collapse is related to
          17   some event that's either long-term or,
               you
          18   know, its common demise of its own age,
               but
          19   whether or not that was the cause of
               collapse
          20   on that day with that storm, I would
               doubt it
          21   was the main factor of the collapse.
          22   Q.   is there anything about your
          23   inspection of or knowledge of the
               condition of
          24   the church that allows you to, or
               serves as

          1    your basis to disagree with that
               statement?
          2    A.   No.
```

Id. at 31-32 (emphasis added).

7

Gethsemane failed to produce any evidence, beyond mere speculation, that the roof's collapse was caused by a wind and rain event. Gethsemane thus fails to make a factual showing sufficient to establish that the cause of the roof's collapse was a covered event under the policy an element essential to Gethsemane's case and on which it would bear the burden of proof at trial. Miller, 218 A.2d at 277. Therefore, there exists no genuine issue as to any material fact, and the Court will grant Nationwide's motion for summary judgment on Gethsemane's claim for breach of contract.

B. Bad Faith

Gethsemane alleges that Nationwide is liable for acting in bad faith on two grounds: (1) for denying Gethsemane's claim under the policy, and (2) by failing to conduct a proper investigation of Gethsemane's claim.

Pennsylvania law supplies a statutory remedy for insureds who prove, by clear-and-convincing evidence, that their insurers acted in bad faith. 42 Pa. Con. Stat. § 8371; Thomer v. Allstate Ins. Co., 790 F. Supp. 2d 360, 369-70 (E.D. Pa. 2011). "Bad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with

the insured." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999).[4]

As to the first argument, that Nationwide acted in bad faith in denying coverage under the policy, the argument fails as a matter of law. The Court has found that, in the light most favorable to Gethsemane, Gethsemane has failed to produce evidence that the loss was a covered loss under the policy. A finding that denial of the claim under the policy was warranted is inconsistent with a claim that Nationwide acted in bad faith in denying the claim. Id. Therefore, Gethsemane's argument cannot stand.

Gethsemane's second bad faith argument, that Nationwide did not conduct an adequate investigation of Gethsemane's claim, also fails. Insurance companies act reasonably, and do not

---

[4] Although the Pennsylvania Supreme Court has not specifically ruled on the issue of whether a plaintiff's statutory bad faith claim is per se contingent on the success of the plaintiff's breach of contract claim, the Superior Court of Pennsylvania "has consistently held that claims brought [under the bad faith statute] are distinct from the underlying contractual insurance claims from which the dispute arose." Nealy v. State Farm Mut. Auto. Ins. Co., 695 A.2d 790, 792-93 (Pa. Super. Ct. 1997) (collecting cases); see also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 435 (3d Cir. 2007) (nonprecedential) ("[A] finding that the insured did not ultimately have a duty to cover the plaintiff's claim does not per se make the insured's [sic] actions reasonable."); Gold v. State Farm Fire & Cas. Co., 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012) ("The bad faith statute has been interpreted to provide a 'cause of action which is separate and distinct from the underlying contract claim.'" (quoting March v. Paradise Mut. Ins. Co., 646 A.2d 1254, 1256-57 & n.5 (Pa. Super. Ct. 1994))). The Court will therefore assume, without deciding, that a plaintiff's claim of bad faith need not stem from an insurer's denial of coverage and instead may extend to the insurer's investigative practices. Accordingly, the Court will consider the bad faith claim independently as it relates to Nationwide's alleged failure to investigate the policy claim.

exercise bad faith, when they deny claims based upon engineering experts' reports. See El Bor Corp. v. Fireman's Fund Ins. Co., 787 F. Supp. 2d 341, 349 (E.D. Pa. 2011) (finding that the insurance company's reliance on an engineer report's findings was a basis for denial of coverage that "provided[d] reasonable grounds to deny benefits"); see also Palmisano v. State Farm Fire & Cas. Co., Civil Action No. 12-886, 2012 WL 3595276, at *15 (W.D. Pa. Aug. 20, 2012) ("In all, the Court finds that State Farm had a reasonable basis to rely on the conclusions of the structural engineer's report as to the cause of the damage to Plaintiffs' home and deny coverage under the exclusions cited in its letter.").

Here, there is no dispute that the June 14, 2018, engineering report pre-dated Nationwide's July 12, 2018, denial of Gethsemane's claim. The only argument Gethsemane advances for its bad faith claim regarding investigation is that Nationwide relied on the report from D2 Consulting Group, LLC, to investigate Gethsemane's claim. Gethsemane argues, without support, that the report was "devoid of facts, experiments, measurements, testing, and scientific principles." However, a review of the report clearly shows that the report was prepared based upon an inspection of the property and that D2 Consulting provided Nationwide with photographs and measurements of the property. Nationwide, in denying coverage, also stated that

10

"[i]f [Gethsemane] believe[s] there is additional information that should be considered or some other reason the policy should provide coverage" Gethsemane should "provide that information in writing within 30 days." Gethsemane points to no such information that was provided. In light of these facts, no reasonable jury could find, by clear-and-convincing evidence, that Nationwide's reliance on the report constituted bad faith. See Totty v. Chubb Corp., 455 F. Supp. 2d 376, 390 (W.D. Pa. 2006) (granting summary judgment for the insurer on the plaintiff's bad faith claim because "even if the expert incorrectly assessed the cause of damage, this is not evidence that his conclusions were unreasonable or that Defendant acted unreasonably in relying upon them.").[5]

Because both of Gethsemane's bad faith arguments lack merit, summary judgment in favor of Nationwide is appropriate.

V. Conclusion

For the forgoing reasons, this Court will grant Nationwide's motion for summary judgment, entering judgment in its favor and against Gethsemane.

An appropriate order follows.

---

[5] See also Palmisano, 2012 WL 3595276 at *14-15 (granting the insurer's motion to dismiss because it reasonably relied on an engineering expert's report to deny the insureds claim even though the insured argued the report "glossed over" or "ignored" information offered by the insured).